Edward GRANT, Petitioner,

v.

Robert ABRAMS, Respondent.

No. 83 Civ. 8682 (KTD).

United States District Court,
S.D. New York.

March 28, 1984.

Edward Grant, pro se.

Robert Abrams, Atty. Gen., N.Y., New York City, for respondent; Vida Alvy, Asst. Atty. Gen., Albany, N.Y., of counsel.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

This petition for a writ of habeas corpus is brought by a state court probationer pursuant to 28 U.S.C. § 2254. Petitioner, Edward Grant, challenges his sentence on two grounds: (1) that the trial court admitted evidence which arose after the crimes charged in the indictment, and (2) that the trial court introduced the testimony of petitioner's co-defendant in violation of the *Bruton* Rule. I find both grounds without merit and dismiss the petition.

### FACTS

While posing as a clerk as part of an undercover drug operation at Bellevue Hospital, Police Officer Catherine DeLaRionda purchased thirty grains of cocaine from a hospital employee, Issac Blaine, on November 3, 1977. DeLaRionda electronically recorded this and several other transactions. One week later, when DeLaRionda indicated her desire to purchase more cocaine, Blaine referred her to the petitioner. Record at 73–74.

On November 15, 1977, Grant sold DeLaRionda one-eighth of an ounce of cocaine which he delivered to her the next day in exchange for $350. Record at 83–85. DeLaRionda also approached Grant on November 22, 1977, to arrange for the purchase of some pills. Grant, however, informed the police officer that he was unable to obtain them at that time.

The Department of Investigation ordered DeLaRionda to discontinue her investigation of Grant on November 23, 1977. Grant, however, made several further attempts to sell cocaine to DeLaRionda, without any initiation by the undercover officer. Finally, on March 14, 1977, Grant appeared at DeLaRionda's office and called her into the hall. There he informed her that he had received a new shipment of cocaine, and he offered her a sampling of the drug. In addition, the recorded conversation reveals that Grant advised DeLaRionda that she could recover her investment in the cocaine more easily if she diluted it twice. Record at 195–197. On March 19, 1978,

DeLaRionda completed her assignment at Bellevue Hospital without making any further drug purchases from the petitioner. Record at 202.

Grant was convicted of criminal possession of a controlled substance in the fifth and seventh degrees and criminal facilitation in the first degree. The Supreme Court of New York County sentenced him to five years probation.

On April 5, 1983 the Appellate Division, First Department affirmed Grant's conviction without opinion, and leave to appeal was denied by the Court of Appeals on July 5, 1983. Grant filed this petition for a writ of habeas corpus with the *pro se* office on December 1, 1983. Both grounds raised by Grant have been properly exhausted in the state courts.

### DISCUSSION

The first ground of Grant's petition for habeas corpus review is that the state introduced evidence of statements that he had made after the crimes charged in the indictment, and that this introduction violated the Constitution. The trial record demonstrates, however, that petitioner did not make a contemporaneous objection to the introduction of these statements at trial. When Grant attempted to raise this first ground before the Appellate Division, the state responded by arguing that he was procedurally barred. State procedural law generally bars a defendant from raising alleged errors on appeal that the defendant failed to object to at trial. *See People v. Thomas*, 50 N.Y.2d 467, 471–474, 407 N.E.2d 430, 429 N.Y.S.2d 584 (1980); N.Y. Crim.Proc.Law § 470.05(2).

The Appellate Division affirmed Grant's conviction without opinion. By the Appellate Division's summary affirmance, this court should infer that the conviction was affirmed on procedural grounds. *See Martinez v. Harris*, 675 F.2d 51 (2d Cir.), *cert. denied*, 459 U.S. 849, 103 S.Ct. 109, 74 L.Ed.2d 97 (1982). An affirmance on procedural grounds precludes habeas corpus review, "since there was an adequate and independent state ground for affirming the

conviction, unless appellant can show cause for failure to object and prejudice from the alleged constitutional violation." *Edwards v. Jones*, 720 F.2d 751, 754 (2d Cir.1983) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87–91, 97 S.Ct. 2497, 2506–08, 53 L.Ed.2d 594 (1977)). Grant has suggested neither cause for failure to object to the introduction of this evidence nor prejudice from the alleged constitutional violation, and I cannot discern any. Therefore, habeas corpus review is denied on this issue.

Grant's second ground for habeas corpus review is that the trial court admitted inculpatory statements by a co-defendant who did not testify at trial and that this violated the *Bruton* rule and the Sixth Amendment. *See Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). In this instance, Grant's counsel made a contemporaneous objection to the introduction of Blaine's hearsay statements, but the trial court received them, "subject to connection, subject to a motion to strike later on." *See* Record at 74. Although petitioner's counsel did not subsequently make this motion to strike, I find Grant's initial objection preserved review of his second claim. Therefore, I will proceed to the merits of Grant's second claim.

*Bruton* protects a defendant's Sixth Amendment right to confrontation by prohibiting the introduction of a co-defendant's inculpatory statements when the co-defendant is unavailable for cross examination. 391 U.S. at 137, 88 S.Ct. at 1628. In certain circumstances, however, the court may admit the hearsay statements provided they bear some "indicia of reliability." *See Ohio v. Roberts*, 448 U.S. 56, 65–66, 100 S.Ct. 2531, 2538–39, 65 L.Ed.2d 597 (1980). Such reliability "can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." *Id.* 448 U.S. at 66, 100 S.Ct. at 2539.

■ The state urges that Blaine's statements are admissible against Grant under the co-conspirator hearsay exception to the *Bruton* rule. This exception permits the introduction of a co-conspirator's statements if they were made in the course and in furtherance of a conspiracy. *See Dut-*

*ton v. Evans*, 400 U.S. 74, 80, 91 S.Ct. 210, 215, 27 L.Ed.2d 213 (1970); *People v. Sanders*, 56 N.Y.2d 51, 436 N.E.2d 480, 451 N.Y.S.2d 30 (1982). Under New York law it is not necessary that the conspiracy actually be charged in the indictment. *See People v. Ardito*, 86 A.D.2d 144, 449 N.Y. S.2d 202 (1982), *aff'd*, 58 N.Y.2d 842, 446 N.E.2d 778, 460 N.Y.S.2d 22 (1983). The co-conspirator's hearsay statements may not be introduced, however, unless the prosecution has established *prima facie* proof of the defendant's participation in a conspiracy, independent of the hearsay statements. *People v. Salko*, 47 N.Y.2d 230, 238, 391 N.E.2d 976, 981, 417 N.Y.S.2d 894, 899 (1979). The issue, then, is whether the state had established Grant's participation in a conspiracy with Blaine.

■ The essence of a conspiracy is an agreement between two or more persons to accomplish a criminal or unlawful purpose. *United States v. Ingredient Technology Corp.*, 698 F.2d 88 (2d Cir.1983). Here, in order to prove the alleged conspiracy the state must show: (1) the existence of the conspiracy, (2) that Grant knowingly joined himself to the conspiracy and intended to further its purpose and (3) that an overt act was committed in furtherance of the conspiracy. *See United States v. Tramunti*, 513 F.2d 1087 (2d Cir.), *cert. denied*, 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975). I believe the trial record sets forth sufficient evidence to establish a *prima facie* conspiracy between Blaine and Grant.

The trial record includes a conference between the trial judge, the defense counsel, and the prosecuting attorney in which the admissibility of Blaine's hearsay statements was discussed. *See* Record at 40. The trial judge indicated that he required some independent proof that the two had in fact acted in concert. After disclosing the content of Blaine's statement to the court, the prosecuting attorney introduced the transcript of tape 3595 which contained the following dialogue between DeLaRionda and Grant:

She [DeLaRionda] says, "you know that I got some stuff from Drag [Blaine], right?" He [Grant] says ..., "[y]eah."

And she says, "Are you the one that gave him that or are you the other guy?" He says, "I'm the guy that gave it to him."

*See* Record at 42. Thereafter, the trial judge indicated that he would receive Blaine's statements, and evidence based on the above dialogue was presented to the jury during DeLaRionda's direct examination. *See* Record at 76. Although this is the only transaction independent of the hearsay statements which reveals that Grant and Blaine acted in concert, it provides the state with sufficient evidence to establish *prima facie* proof of the conspiracy.

First, this dialogue reveals that Grant was aware of the previous November 2, 1977 cocaine sale, and, in fact, that Grant had been Blaine's supplier of the drug. Furthermore, after Blaine directed the officer to petitioner, Grant's evident willingness to sell cocaine indicated that Grant expected her or knew her reasons for approaching him. This also demonstrates that Grant was acting in concert with Blaine. Together, they establish *prima facie* the existence of an agreement or conspiracy to sell cocaine, Grant's knowing and active participation in the conspiracy, as well as an overt act in furtherance of the conspiratorial aims—namely, the November 2 and 15, 1977 cocaine sales. Therefore, Blaine's statements fall into the conspiracy exception to the *Bruton* rule and were admissible against Grant. *See People v. Sanders*, 451 N.Y.S.2d at 30, 56 N.Y.2d at 51, 436 N.E.2d at 480. Because the statements fall into a "well-established" hearsay exception, they have sufficient "indicia of reliability" to permit their introduction against petitioner without violating his Sixth Amendment right to confrontation.

Accordingly, petitioner's application for writ of habeas corpus is dismissed.

SO ORDERED.